## Mark Doolittle *vs.* William C. Dwight & another, Administrators.

A surety, who pays the debt of the principal by giving his own promissory note therefor, may maintain an action against him for money paid.

Co-sureties, who pay the debt of their principal by giving their own joint and several promissory note, are not entitled to several actions against him for reimbursement : Yet if one of the sureties sues alone for reimbursement, and the principal does not take advantage of the non-joinder of the other, but suffers the action to proceed, and pays the sum which is recovered against him ; such surety is liable to his co-surety for half the amount so recovered, whether it be the whole or only a part of the sum jointly paid by both.

One of two joint sureties, with the consent of the other, gave up security which he had taken for the benefit of both, on receiving the written promise of the principal that he would pay the debt or return the security. This promise was not performed, and the sureties paid the debt ($ 1080) by giving their joint and several note therefor, payable on time : Before that note was paid or payable, the surety to whom said promise was made sued the principal for breach thereof, and added the money counts to his declaration : The action was, by rule of court, submitted to referees, who awarded that the plaintiff should recover $ 600, and the principal paid him that sum, without judgment on the award : The other surety then brought an action to recover of his co-surety half the sum thus received by him of the principal. *Held,* that he was entitled to recover. *Held also,* that parol evidence was admissible to show that at the hearing before the referees, the plaintiff in the action abandoned his special count on the principal's promise, and proceeded, without objection from the principal, to give evidence of the payment of his debt by the sureties.

Although where two sureties jointly pay the debt of the principal, they should join in a suit for reimbursement, and although if one brings such suit alone, the other has an interest in the event thereof, yet if he is called as a witness by the plaintiff, and is not objected to by the defendant, he is bound to testify, and does not by testifying estop himself to claim of the plaintiff the benefit of the recovery from the principal.

This was an action of assumpsit by a surety, to recover of the administrators of his co-surety one half of a sum of money re-

ceived of the principal by the intestate, for the equal benefit of both sureties. The facts of the case are sufficiently stated in the opinion of the court.

Written arguments were submitted to the court in 1840.

*Wells*, for the plaintiff.

*I. C. Bates*, *Ashmun & Huntington*, for the defendants.

SHAW, C. J. * This action has been long pending, and we much fear has been protracted by the means adopted to accelerate its progress. Instead of a jury trial, for which some of the parties were not prepared at the regular time for trial, it was agreed to refer the case to auditors, to report a statement of facts, to be considered as in the nature of a special verdict. There is a satisfaction, however, in believing that there is some compensation for this delay, in a fuller and more complete statement of the facts, than would otherwise have been obtained.

The only material question is, whether the plaintiff is entitled to recover any thing of the defendants, administrators of the estate of Jonathan Dwight, late of Belchertown, in consequence of the recovery of money, by the latter, of Joseph Strong. Some other small sums appear by the auditors' report to be due, which are not seriously contested.

Without going far in recapitulation of the facts presented by the report, we may consider that the plaintiff and the defendants' intestate were sureties on notes of Joseph Strong to a large amount ; that after applying all the funds furnished by Strong, the principal, there remained due to the Phœnix Bank at Hartford the sum of $ 1080, which the sureties were compelled and equally bound to pay. This they did, on the 13th of September 1830, by giving their joint and several promissory note for the amount, payable in one year. These facts establish the relation in which they stood to each other, and to the common principal. Considering the giving of their own promissory note to the bank, (which was accepted in payment, and by which Joseph Strong, the principal, was wholly discharged,) as a payment of the pre-existing debt, they were in the condition of sureties who had

* *Dewey*, J. did not sit in this case.

jointly paid the debt of the principal ; and therefore, upon the common principle of equity, they had a good joint cause of action against him. And it further results, that as they had given their joint note, in discharge of a duty and obligation for which they were equally bound, if either should afterwards pay the whole or a disproportionate share of the note thus given, it would give him an equitable and legal claim for such a contribution as would leave the ultimate burden equal on both. It seems to be equally clear, that if after such payment by joint note, and the consequent establishment of' a joint right of action, although either party might receive the whole or any part of the sum thus due to both jointly, and give a discharge, yet the receipt would be on joint account, and the party receiving would be responsi ble to the other for half of the amount so received.

Supposing these principles to be sound, it becomes necessary to apply them to the circumstances of the present case.

It appears, that before this joint note was given to the Phœnix Bank upon an ultimate settlement, and whilst both the plaintiff and Dwight were responsible for Strong, for a much larger sum, Strong had placed in the hands of Dwight the note and mortgage of a third person, to the amount of $ 5000, as collateral security, for the common benefit of the sureties. This security Dwight had surrendered to Strong, with the consent of Doolittle, upon the personal promise of Strong in writing, given to Dwight, engaging to raise money on it to the amount of $ 5000, and apply it in discharge of his debt and for the relief of the sureties, or return the note and mortgage to Dwight, to be held as before, for the common benefit of the sureties. He did neither. There was, therefore, a breach of this promise, upon which Dwight had a right of action in his own name, upon which he commenced an action against Strong, and held him to bail, in March 1831, within a year after the $ 1080 note was given by Dwight and Doolittle to the Phœnix Bank. In this action there was a count on the said express promise, and counts for money paid and money had and received. This action remained apparently dormant, until 1835, when having been brought into this court, it was referred, by an ordinary rule of

court. An award was made in favor of the plaintiff for $600 and costs, which, without being entered in court for a formal judgment, was subsequently paid, in May 1836.

Without entering minutely into the circumstances which occurred before the referees, we think it clearly proved that the recovery was had, not upon the special count, but on the money counts; and we are of opinion that it was competent to prove these facts by parol evidence. It is conceded, that if the money had been recovered on the express promise of Strong, though recovered by Dwight in his own name, it must have enured to the equal benefit of Doolittle, his co-surety. But it is contended, that as the amount was recovered on the money counts, or one of them, it was for Dwight's own separate benefit; and this is the real and material question.

We are to proceed on the assumption, that the plaintiff in that suit recovered according to his right of action. The only count on which he could recover was for money paid; that is, paid for the then defendant Strong, as his surety. The plaintiff could not rely, for this purpose, upon any payment made by himself on the $1080 note to the Phœnix Bank; because, at the commencement of the action, and indeed at the time of the hearing before the referees, he had paid nothing on that note, although Doolittle, at the latter period, had paid something more than one half, and both stood liable on their joint note to the bank for the balance. The payment relied upon then, to support the action for money paid, was the payment made *by* the note of $1080; and as they had exonerated the principal and satisfied his debt by these means, this evidence was sufficient to support that count. *Cornwall* v. *Gould*, 4 Pick. 444. *Chandler* v. *Brainard*, 14 Pick. 285. *Osborne* v. *Harper*, 5 East, 225. But the money paid *by* that note was paid by his co-surety and himself jointly, and raised a joint cause of action against Strong for a reimbursement; and therefore whatever was recovered on that cause of action enured to their joint benefit. The recovery was to the use of both, and gives the plaintiff a right to one half.

But it is said, that Dwight could not have maintained the ac-

tion in his own name on this ground, but must have sued jointly with Doolittle. This is true ; and if the then defendant had seen fit to object to it, and put his defence on that ground, he might have prevailed. But it appears by the evidence, that he did not take that objection. Either of the joint creditors would have had a right to receive the money without suit, and to give a good discharge ; and therefore if an action is brought by one, where two or more ought to join, and the defendant does not choose to take advantage of this ground of defence, the plaintiff will recover. But further ; although the defendant in that action might have availed himself of that defence, yet the present defendants, who represent the plaintiff in that action, can make no such objection. There was no other legal ground on which he could recover ; and the inference is inevitable, therefore, that he did recover upon that ground, and received and still holds the money, for which he thus obtained an award.

But then it is said, upon that ground he might equally well have recovered the whole $ 1080 ; and this is true, if the defendant, Strong, had not objected. But if that sum had been claimed, it would, in all probability, have immediately led to the objection, that both ought to have joined.

But we think it is easy to perceive how the matter proceeded before the referees. The action was brought in the name of Dwight alone, because he relied mainly upon the express prom ise, on which he alone could sue. The leading count was upon this promise ; the money counts were added by way of precaution. On the opening of the cause, the counsel for the plaintiff went for the whole, on the special promise. Finding there was an impediment — perhaps the discovery that Mr. Doolittle was interested, and therefore the evidence failed — the counsel determined to go on the count for money paid. The joint note for $ 1080 had not been taken up, and of course was not before the referees ; and the parties seem to have gone on the assumption, without proof, that the sureties had each paid a moiety of the balance for which, as sureties, they were liable, by their re spective several notes, or otherwise. This accounts for the fact, that the defendant did not object to the action on the ground that both should have joined

But then it is said, that the present plaintiff ought now to be estopped from setting up a claim to any part of the money recovered in that suit, because he testified as a witness before the referees, and thereby held himself out as disinterested.

In the first place, he may not have known his legal rights, and acted under a mistake. But further ; he refused to release his interest in the suit, and thereby intimated to all parties that he did not relinquish his legal rights, if he had any. Again ; he was called as a witness by the plaintiff ; and if he was not objected to by the defendant, as it appears by the case that he was not, he not only was not bound to decline testifying, but he could not do so ; he was compellable to testify, interest or no interest. Nor could he there set up any claim of his own, or object to the plaintiff's suit or right to recover. He was no party to the suit, and had no power to offer plea, or make proof, or do any thing but testify. We see nothing, therefore, in his conduct, inconsistent with good faith and integrity, or which should debar him from recovering in this action. It is said, that he there supported Dwight's several right of action by his testimony, and now denies it by bringing this action. The answer we think is, that he could only testify to facts, and it was for others to determine what rights were established by them. He may have participated in the common mistake, that Dwight had several cause of action against Strong, arising from the payment which had in fact been made ; but that question was not made or discussed, nor did he say more than testify to the facts, so far as he was inquired of.

2. But the argument for the defendants is put on another and different ground, and it is this : As there was no judgment on the award, the action and the award may be laid out of the case altogether, and the case simplified and stated thus : That Dwight and Doolittle were liable for $ 1080 on their note to the Phœnix Bank, originating in the suretyship for Strong ; that Doolittle, at different times prior to 1835, paid one half of it ; that in December 1835, Dwight paid one half of it, or thereabouts, and in May following succeeded, by his diligence in obtaining of Strong $ 600, and has a right to hold it, to reimburse him for the amount which he had thus previously paid.

But this, we think, proceeds upon more than one untenable assumption.   The money paid upon the $1080 note, in December 1835, was not money paid for Strong.   The whole amount was paid for him when that note was given.   What each paid on that note, he had a claim of contribution for on the other, not because they were or had been sureties for Strong, but because they were joint promisors on a note given for a debt, for which they were both equally liable.   It is precisely the same as if they had paid the Phœnix Bank in cash, instead of the $1080 note, and given a joint note to another bank.   Had they, therefore, paid this $1080 equally, and made a settlement between themselves, each having paid an exact moiety, it is doubtful, to say the least. whether either could maintain a several action for such half against Strong ; because his liability arose not from that payment of that note, but at an earlier stage, upon the giving of that note.   But it is not necessary to put the answer to this argument upon this ground, because there is another more plain and palpable.   The money paid by Joseph Strong to Dwight, in April 1836, could not be a reimbursement of the money paid by Dwight to the Phœnix Bank in the December preceding, because his receipt, given by his attorney, is in terms given in satisfaction of the award which was made in November previous, and before that payment to the Phœnix Bank was made.   The money was acknowledged to be received in full satisfaction of the award.   There was no need of a judgment on the award to give it effect as a valid claim.   We are then to look to the subject matter, upon which the award was made, and the time at which it was made, to ascertain on what account the money was paid in May 1836.   At that time Dwight had paid no *money* on account of his suretyship, and therefore could claim nothing, and recover nothing, as money actually paid by him.   He could only recover in virtue of the payment made by the joint note, and that gave a joint cause of action against the principal, and no other.

Another consideration confirming this view is this : The action brought by Dwight was commenced in March 1831, within a year of the time when the $1080 note was given ; and of

course ,before it was due, and before any payment on it. He was to recover according to tne right of action, as it existed against Strong, when the action was commenced. Nothing which took place between Doolittle and Dwight, during the pendency of the action, could affect Dwight's right to recover of Strong. It was therefore wholly immaterial, whether the $ 1080 had been paid or not, in whole or in part, one half by each or how otherwise. And so, it is manifest from the evidence, the referees considered it. After the count on the special contract was abandoned, the question submitted to them was, whether the payment of the debt of the principal by the surety *by note* would support a count for money paid. They decided, very correctly, that it would. Mr. Doolittle then testified, that he and Dwight had paid the debt to the Phœnix Bank, by note, before the action was brought. He did not state whether each had paid one half by his separate note, or both by a joint or joint and several note. The counsel stated, in opening that part of the case, that the then plaintiff had paid one half by note, and proposed to recover that half. This was not objected to. The particular inquiry, how it was paid, was not pursued, and the cause proceeded on the assumption, that he had paid one half by a several note.

3. An argument *ab inconvenienti* is urged against the plaintiff's recovery, thus : If the plaintiff can recover back a moiety of what Dwight recovered of Strong, then Dwight has a new right of action against Strong, to recover half the balance ; Doolittle will have another action against him ; and so they may go on dividing and subdividing the balance *ad infinitum*. This inconvenience may be easily put an end to by Strong. He has only to say, when sued by one of two having a joint right of action, that he objects, and the matter is at an end.

We are strongly inclined to the opinion, that the equity of the case concurs with this technical view of the law. The action was brought in the name of Dwight, avowedly for the benefit of both, on a contract made to one for the use of both. It was so prosecuted up to the time of the reference. Why then should not the fruits of the action, brought and prosecuted for the use

of both, enure to the benefit of both ? The answer of the defendants, founded upon strict technical grounds, is, that in the event which occurred, Dwight was deterred from proceeding on the contract in which both were interested, and was obliged to proceed upon his own several demand, and did in fact recover upon his own several cause of action. But it turns out, upon a more accurate investigation of facts and application of the law, that he had no separate cause of action ; that he did in fact recover upon a cause of action, which had accrued to himself and the plaintiff jointly, and to which the then defendant, through ignorance of the fact, or inadvertence to the law, or perhaps from choice, did not object. This is a good technical answer to the technical objection, and puts the legal right of the plaintiff on the same footing as if the plaintiff had recovered on the special contract according to the original intention of the parties.

*Judgment for the plaintiff.*